**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| DOROTHY D. GLODEK, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-19-2115 |
| | * |
| CHARLES P. RICHARDSON, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Dorothy D. Glodek brings suit against Defendants Charles P. Richardson and Parks Family, LLC ("Parks Family") based on alleged false representations Defendants made in order to induce Plaintiff to enter into a contractual business arrangement. ECF No. 1. She alleges claims of fraud and fraudulent inducement and seeks a declaratory judgment that the parties' contract is null and void pursuant to 28 U.S.C. § 2201 and Md. Code Ann., Cts. & Jud. Proc. § 3-401 *et seq. Id.* Pending before the Court is Defendants' Motion to Dismiss, Stay or, Alternatively, to Transfer. ECF No. 8. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss, Stay or, Alternatively, to Transfer is granted.

**I.  BACKGROUND[1]**

Plaintiff is the former owner of AMI Cardiac Monitoring, Inc. ("AMI"), which was in the business of providing cardiac monitoring services for patients. ECF No. 1 ¶¶ 6, 8. Defendant Richardson is the sole member of Defendant Parks Family, which claimed to own various

---
[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

1

technologies ("Parks Technology") that could enhance the cardiac monitors used by AMI. *Id.* ¶¶ 3, 8. In November 2016, Plaintiff and Defendant Richardson began discussing a joint venture through which they would use the Parks Technology to enhance Plaintiff's cardiac monitors, thereby serving a greater number of patients and obtaining a larger profit. *Id.* ¶¶ 7–8. On March 30, 2017, the parties created IntelHeart International, Inc. ("IHI"), the entity through which they would pursue this joint venture. *Id.* ¶ 9.

The parties then signed the Contribution and Exchange Agreement (the "Agreement"), effective May 12, 2017. *Id.* ¶ 7. The Agreement provided that Plaintiff would sell, transfer, assign, and contribute AMI to IHI in exchange for a 50% ownership interest. *Id.* ¶ 9. That interest was assigned to D Glodek Lucketts Family LLC ("Glodek Lucketts Family"). *Id.* The Agreement also provided that Defendant Parks Family would sell, transfer, assign, and contribute the Parks Technology to Advanced BioIP, an IHI subsidiary wholly-owned by Plaintiff, in exchange for a 50% ownership interest in IHI. *Id.*

At some point during this business relationship, Plaintiff learned that Defendants had allegedly made false representations about their ownership interest in and the nature of the Parks Technology in order to induce Plaintiff to enter the Agreement. ECF No. 1 ¶¶ 12, 17, 19. Defendants, in turn, became aware that Plaintiff had allegedly made misrepresentations about the financial health of AMI in order to induce Defendants to enter into the Agreement. *Richardson v. Baylor & Backus, CPAs*, Case No. DCLC–CRW–18–200, ECF No. 34 (E.D. Tenn.) ("Tennessee Case"). They also learned that Plaintiff was allegedly misappropriating AMI's funds and colluding with accountants to cover up that misappropriation. *Id.*

On November 2, 2018, Defendants sued Plaintiff, Glodek Lucketts Family, DMS-Service, which was one of AMI's vendors, and Lynda Cole, who was DMS-Service's president,

2

in the Middle District of Florida alleging fraudulent inducement, breach of duty of care, breach of duty of loyalty/misappropriation of business assets, breach of duty to inform, fraud, conspiracy, and violation of Florida's Deceptive and Unfair Trade Practices Act. *Richardson v. AMI Cardiac Monitoring, LLC*, Case No. TJC–PDB–18–1294, ECF No. 1 (M.D. Fla.) ("Florida Case").[2] On July 11, 2019, the Florida court granted a motion to dismiss and gave Defendants until August 9, 2019 to file an amended complaint. Florida Case, ECF No. 38. Defendants never filed an amended complaint, and the Florida court dismissed the case on August 23, 2019. Florida Case, ECF No. 41.

On November 16, 2018, Defendants filed a new case in the Eastern District of Tennessee. Tennessee Case, ECF No. 1. Defendants filed an amended complaint on May 23, 2019, and they filed a second amended complaint on July 15, 2019. Tennessee Case, ECF Nos. 26, 34.[3] The second amended complaint named several accounting firms who were involved in Plaintiff's alleged fraudulent conduct and raised a variety of claims against Plaintiff and Glodek Lucketts Family, including fraudulent inducement, fraud, breach of duty of care, breach of duty of loyalty, and misappropriation of business assets, based on the same misrepresentation, misappropriation, and collusion as the Florida Case. Tennessee Case, ECF No. 34.

On August 27, 2019, Plaintiff and Glodek Lucketts Family filed a motion to dismiss. Tennessee Case, ECF No. 50. The motion raised several arguments, including improper venue and that the Agreement between the parties was null and void because the interest in the Parks Technology that Defendants transferred to Advanced BioIP was materially different from what was represented in the Agreement. *Id.* This motion remains pending before the Tennessee court.

---

[2] Defendants brought the case individually, as well as derivatively on behalf of IHI and AMI. IHI and AMI were also named as nominal defendants in the Florida Case.
[3] Just as in the Florida Case, Defendants brought the Tennessee case individually, as well as derivatively on behalf of IHI and AMI.

On July 18, 2019, Plaintiff filed the instant case in this Court. ECF No. 1. The Complaint alleges that Defendant Richardson made false representations regarding Defendants' ownership interest in and the nature of the Parks Technology in order to fraudulently induce her to enter into the Agreement. *Id.* ¶¶ 43–64. She seeks a declaratory judgment that the Agreement is null and void pursuant to 28 U.S.C. § 2201 and Md. Code Ann., Cts. & Jud. Proc. § 3-401 *et seq. Id.* ¶¶ 25–36. On August 27, 2019, Defendants filed a Motion to Dismiss, Stay or, Alternatively, to Transfer to the Eastern District of Tennessee. ECF No. 8. Plaintiff filed an opposition on September 20, 2019, ECF No. 9, and Defendants filed a reply on September 24, 2019, ECF No. 10.

## II. DISCUSSION

Defendants contend that this case must be dismissed because the Court does not have personal jurisdiction over Defendants, Plaintiff brought her claims in an improper venue, and Plaintiff's claims are compulsory counterclaims that should have been raised in the Tennessee Case. In the alternative, Defendants contend that this case should be transferred to the Eastern District of Tennessee pursuant to the first-filed rule or it should be stayed so that the Tennessee court can decide whether it wants to retain jurisdiction over the Tennessee Case. In opposition, Plaintiff contends that this Court does have personal jurisdiction over Defendants and venue is proper. Plaintiff contends further that Defendants' arguments based on compulsory counterclaims and the first-filed rule must be rejected because venue is improper in the Eastern District of Tennessee. The Court concludes that even if it does have personal jurisdiction over Defendants and venue is proper, this case must be transferred to the Eastern District of Tennessee pursuant to the first-filed rule.

"The Fourth Circuit has recognized the 'first to file' rule [], giving priority to the first suit absent showing of a balance of convenience in favor of the second." *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 300 (4th Cir. 2001). "Under the 'first-filed' rule, for purposes of choosing between possible venues when parallel litigation has been instituted in separate courts, the court in which jurisdiction first attaches should be the one to decide the case." *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998). "The purpose of this rule is the avoidance of duplicative litigation and the conservation of judicial resources and to ensure judicial efficiency, consistency, and comity." *Income Tax School, Inc. v. Lopez*, Case No. 3:12–CV–334, 2012 WL 3249547, at *12 (E.D. Va. 2012) (internal quotations omitted). "Courts give effect to [the first-filed rule] by staying the second case, dismissing it, or transferring it to the first case's forum." *Scardino v. Elec. Health Res., LLC*, Case No. PMD–14–2900, 2016 WL 1321147, at *2 (D.S.C. April 5, 2016).

Application of the first-filed rule requires the second-filed court to "consider 'whether the two competing actions are substantively the same or sufficiently similar to come within the ambit' of the principle." *Id.* (quoting *Victaulic Co. v. E. Indus. Supplies, Inc.*, Case No. JMC–13–1939 (D.S.C. Dec. 6, 2013)); *see also Income Tax School, Inc.*, 2012 WL 3249547, at *12; *Pfizer, Inc. v. Mylan, Inc.*, Case No. 1:09–CV–79, 2009 WL 10270101, at *2 (N.D.W. Va. Nov. 20, 2009). "Typically, three factors inform that consideration: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake." *Scardino*, 2016 WL 1321147, at *2 (internal quotations omitted).

"While the invocation of the first-to-file rule is the norm, when a court is presented with special or exceptional circumstances, or upon 'the showing of balance of convenience in favor of the second action,' the court where the first action is filed may in its discretion depart from the

first-to-file rule." *Income Tax School, Inc.*, 2012 WL 3249547, at *12 (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). However, "it is the province of the first-filed court to determine 'whether an exception to the first-filed rule applies.'" *Pfizer, Inc.*, 2009 WL 10270101, at *2 (quoting *Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.*, 294 F. Supp. 2d 823, 828 (N.D.W. Va. 2003)); *see also Income Tax School, Inc.*, 2012 WL 3249547, at *13 ("[T]he court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies.").

Here, the first-filed rule requires transfer to the Eastern District of Tennessee. First, the "chronology" prong weighs in favor of transfer because the Tennessee Case was filed before the instant case. The "identity of parties" prong also weighs in favor of transfer because each party in this case is involved in the Tennessee Case. It is irrelevant that the Tennessee Case also involves various accounting firms that Plaintiff allegedly used to cover up her misappropriation of funds because the involvement of these parties does not "alter the gravamen of the dispute." *Davis v. Zuccarello*, Case No. 1:16–cv–1086, 2017 WL 2729089, at *3 n.5 (M.D.N.C. June 23, 2017) (stating that even though the two lawsuits named parties in "different capacity[ies] … [that did] not alter the gravamen of the dispute"); *see also Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, Case No. 5:12–CV–192–F, 2012 WL 2062299, at *3 (stating that "the parties involved in both litigations [were] nearly identical" and the presence of an additional defendant "d[id] not change the gravamen of the dispute"). Finally, the "similarity of issues" prong weighs in favor of transfer because the cases are substantially similar. They stem from the same Agreement and business arrangement and they will likely involve many of the same factual issues surrounding the formation of the Agreement. Indeed, Plaintiff raised many of the claims in

the Complaint in her motion to dismiss the Tennessee Case. Therefore, "in the interest of promoting the uniformity of results, avoiding duplicative litigation, and conserving scarce judicial resources," the Court declines to exercise jurisdiction over Plaintiff's second-filed suit and transfers this case to the Eastern District of Tennessee. *See Pfizer, Inc.*, 2009 WL 10270101, at *3 (transferring case to first-filed court where three prongs were satisfied).

To the extent that Plaintiff claims transfer is improper because the Eastern District of Tennessee is not a proper venue, that is an issue for the Tennessee court to decide as the first-filed court. *See Income Tax School, Inc.*, 2012 WL 3249547, at *13. This case will be dismissed without prejudice, so should the Tennessee court decide it is not the proper venue in response to Plaintiff's motion to dismiss in that case, the parties are free to re-file their claims in the appropriate court.

## III.　CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Stay or, Alternatively, to Transfer is granted. A separate Order shall issue.

Date: <u>January   16,  2020</u>　　　　　　　　　　　<u>　/s/　　　　　　　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge